495 So.2d 744 (1986)
Robert Allen TEFFETELLER, Appellant,
v.
STATE of Florida, Appellee.
No. 66,672.
Supreme Court of Florida.
August 21, 1986.
Rehearing Denied October 28, 1986.
Carmen F. Corrente, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
On January 14, 1979, Peyton Moore was returning to his home in Ormond Beach after jogging on the beach. Two men, appellant and Overton, in a light blue Ford Torino stopped Moore and demanded his wallet. When Moore told the men he had *745 no money, a shotgun was pointed out the passenger-side window and discharged, killing Moore. In Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984), we affirmed appellant's conviction of this first-degree murder, but because of improper and prejudicial prosecutorial comments, we vacated the sentence of death and remanded for resentencing before a jury. This appeal is from the resentencing proceeding wherein the trial judge, following the jury's advisory recommendation, sentenced appellant to death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the sentence.
Appellant challenges his sentence on seven grounds. Our review of the record indicates that only two of these issues warrant discussion.
Appellant claims that it was prejudicial error for the trial court to admit a photograph of the victim into evidence.
One of the problems inherent in holding a resentencing proceeding is that the jury is required to render an advisory sentence of life or death without the benefit of having heard and seen all of the evidence presented during the guilt determination phase. This problem manifested itself sub judice when one of the jurors, during voir dire, expressed concern to the court about his ability to decide a proper advisory sentence without having heard all of the evidence of appellant's guilt. Although this particular juror was eventually excused, the trial judge manifested a keen awareness of this problem. The judge allowed the state to introduce the testimony of several witnesses concerning the murder of Peyton Moore and also allowed the state to introduce one photograph of the victim into evidence.
We note that this evidence was not used to relitigate the issue of appellant's guilt, but was used only to familiarize the jury with the underlying facts of the case. Had this jury also been the same panel that originally determined appellant's guilt, it would have been allowed to see more than simply this one photograph. As we recognized in Henderson v. State, 463 So.2d 196, 200 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 3542, 87 L.Ed.2d 665 (1985), "[t]hose whose work products are murdered human beings should expect to be confronted by photographs of their accomplishments." Again, in Henderson, we said relevancy is the test of admissibility. Id. The essence of appellant's claim here is that the photograph was not relevant to prove any aggravating or mitigating factor and should, therefore, not have been admitted. The issue, however, is broader than framed by appellant. Section 921.141(1), Florida Statutes (1985), provides in pertinent part that in capital sentencing proceedings, "evidence may be presented as to any matter that the court deems relevant to the nature of the crime." We find that the photograph in question here clearly comes within the purview of the statute. We hold that it is within the sound discretion of the trial court during resentencing proceedings to allow the jury to hear or see probative evidence which will aid it in understanding the facts of the case in order that it may render an appropriate advisory sentence. We cannot expect jurors impaneled for capital sentencing proceedings to make wise and reasonable decisions in a vacuum.
Appellant claims that it was reversible error to inform the jury of his prior sentence of death. We agree that a death sentence which has been vacated by this Court should not play a significant role in resentencing proceedings. The resentencing should proceed de novo on all issues bearing on the proper sentence which the jury recommends be imposed. A prior sentence, vacated on appeal, is a nullity. It offers the sentencing jury no probative information on any of the aggravating or mitigating factors weighed in such proceedings and could conceivably be highly prejudicial to a defendant. We find, however, that the mention of appellant's prior sentence sub judice does not require reversal. Two separate grounds support this conclusion.
*746 Initially, both the state and the defense anticipated that a significant percentage of the jury panel would have some knowledge of the facts of this case. Appellant, therefore, moved for individual voir dire in order to prevent a juror's knowledge of appellant's prior sentence being relayed to the entire panel. However, counsel for appellant agreed with the court that a juror's knowledge of the prior sentence would not be grounds for a challenge for cause. The trial court decided to begin the voir dire collectively and denied appellant's motion, but stated that the motion could be renewed if circumstances warranted it. Further discussion concerning the mentioning of the prior sentence during voir dire resulted with the judge ruling that he would probably not declare a mistrial if the prior sentence was mentioned, but admonished both attorneys not to make the prior sentence a key feature of the proceedings. Our review of the record shows that the prior sentence was clearly not so featured.
The first possible allusion to appellant's prior sentence was elicited from Dr. Krop, the defense's psychiatric witness. Dr. Krop testified, in response to appellant's counsel's questions, that he had interviewed many people on death row and that ninety percent of them denied their crimes. In response to the next question, Dr. Krop stated that appellant had adamantly denied being involved in the murder of Peyton Moore.
The next such allusion to appellant's prior sentence occurred during appellant's testimony. One of the major grounds urged by appellant sub judice to persuade the jury to recommend a life sentence was that appellant could safely live within the confines of a prison setting. In order to establish this theory, it was necessary for appellant to explain several incidents, resulting in disciplinary reports, which occurred while appellant was incarcerated. One such incident involved appellant's threatening a prison officer with violence, while appellant was in the Volusia County jail awaiting the instant proceeding. Appellant testified that the officer in question, who started work at midnight, would awaken appellant by kicking and rattling appellant's cell door and would taunt him with remarks such as, "You still alive? Aren't you dead yet?" and "Why don't you go ahead and hang yourself up? Graham is going to make hamburger out of you in that electric chair."
This resentencing jury was instructed from the outset that appellant's prior conviction of first-degree murder must be accepted as a fact by the jury and that its role in the instant proceeding was limited to determining the appropriate sentence to recommend to the trial judge. The jury was explicitly instructed that the final sentencing determination rested solely with the judge. It was also instructed that the only two options available to it was to recommend either life imprisonment without the possibility of parole for twenty-five years or the death penalty. Given that the jury's choice was limited to only these two possibilities, the statements of Dr. Krop concerning death row inmates who typically denied their crimes and Krop's further testimony that appellant likewise denied his involvement in Moore's murder presented this jury with the clear implication that appellant too had been on death row. Appellant's own statements concerning the prison guard's taunts about the electric chair also reinforced this inference.
The final mention of the prior sentence through witness testimony occurred during the examination of Dr. Barnard, the state's psychiatric expert. Responding to the prosecutor's questions concerning his interviews with appellant, Dr. Barnard testified that appellant relayed to him that appellant had "been charged with first-degree murder, later on that he had a jury trial, was found guilty, received the death penalty, sentenced and sent to the Florida State Prison, that subsequently his case was heard on appeal and he was remanded back for a retrial on the issue of sentence."
While this testimony is more explicit than the statements of Dr. Krop or the appellant, Dr. Barnard's testimony merely reaffirmed what had previously been alluded *747 to. In none of the three witnesses' statements concerning the prior sentence was there mention of the prior jury's recommendation, only that a death sentence had been imposed by the original trial judge. While we hold that a prior sentence should not play a key role in resentencing proceedings, the impact here of merely mentioning the prior sentence of death was negligible. Our review of the record clearly shows that the prior sentence did not in any way play a significant role in this proceeding and was not prejudicial to the appellant.
Another, independent ground leads us to reject appellant's contention that mention of the prior sentence requires reversal. We agree with the state that any arguably prejudicial error that resulted from Dr. Barnard's statement has not been preserved for appellate review. Appellant failed to object to Barnard's statements when made, thus denying the trial court an opportunity to cure any alleged error. We reject appellant's claim that his original "concern," expressed to the trial judge during voir dire of the jury, preserved the issue. Appellant cannot bootstrap this concern over the voir dire issue to alleviate the requirement of a contemporaneous objection. See, e.g., Steinhorst v. State, 412 So.2d 332 (Fla. 1982); Clark v. State, 363 So.2d 331 (Fla. 1978). We reject appellant's claim that the prosecutor's mentioning the prior sentence during closing argument requires reversal. The prosecutor also admonished the jury to base its decision exclusively on the evidence received at this proceeding and not on what had previously transpired. The prosecutor did not inform the jury of the previous jury's recommendation or of the reasons the original sentence was vacated. This single sentence was not so prejudicial or inflammatory that a new sentencing proceeding is required. Blair v. State, 406 So.2d 1103 (Fla. 1981). We also find that appellant waived this issue by failing to object to the prosecutor's remarks. Rose v. State, 461 So.2d 84 (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). We reject appellant's claim that the error here was fundamental, obviating the need for a contemporaneous objection. The statement here could have had no significant or even discernible impact on the jury's recommendation and will therefore not be grounds for reversal.[1]See Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).
In sentencing appellant to death, the trial court found the existence of three aggravating factors and none in mitigation. The court found that the appellant was under a sentence of imprisonment when this murder occurred.[2] Appellant had escaped from a Tennessee facility and was at large at the time of this offense. The court also found that appellant had previous convictions for violent felonies.[3] At the time of resentencing, appellant had been convicted in Texas of the murder of Overton, appellant's accomplice in Moore's murder. Appellant had also been convicted of the felony of aggravated assault arising from an incident occurring in the Volusia County jail. Finally, the trial court found that this crime was committed during the course of an attempted robbery.[4] The evidence supporting appellant's conviction clearly showed that appellant and Overton attempted to rob Moore prior to killing him. See Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). Our review of the record shows that these factors were established beyond a reasonable doubt.
Therefore, we affirm this sentence of death.
It is so ordered.
*748 McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
BARKETT, J., concurs specially with an opinion.
BARKETT, Justice, concurring specially.
I concur because the defendant himself advised the jury of his prior status on death row. Absent that, I believe permitting the jury to know that a prior jury recommended death would be so prejudicial as to mandate reversal.
NOTES
[1] We also note that appellant's counsel during his closing argument urged the jury to recommend a life sentence based, in part, on the fact that his client had been on death row for over three years since he was originally convicted, without receiving one disciplinary report.
[2] § 921.141(5)(a), Fla. Stat.
[3] § 921.141(5)(b), Fla. Stat.
[4] § 921.141(5)(d), Fla. Stat.