691 So.2d 1068 (1997)
Michael Alan LAWRENCE, Appellant,
v.
STATE of Florida, Appellee.
No. 82256.
Supreme Court of Florida.
March 13, 1997.
Rehearing Denied April 18, 1997.
*1070 Nancy A. Daniels, Public Defender and Nada M. Carey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Gypsy Bailey, Assistant Attorney General, Tallahassee, for Appellee.
*1071 PER CURIAM.
Michael Alan Lawrence appeals the death sentence imposed upon him after remand. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution, and we affirm Lawrence's sentence.
Lawrence was convicted for the first-degree murder, kidnapping, and armed robbery of a convenience store clerk.[1] On appeal, this Court affirmed Lawrence's conviction for first-degree murder. Lawrence v. State, 614 So.2d 1092, 1096 (Fla.), cert. denied, 510 U.S. 833, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993). The Court, however, vacated Lawrence's kidnaping conviction because it determined the evidence presented did not support the conviction. Id. The Court also vacated Lawrence's sentence of death. Id. In reviewing the sentence, the Court found inapplicable and struck four aggravators.[2]Id. The Court then determined that because of the peculiar facts of this case, it could not find the trial court's error harmless. Id. The Court noted that the State introduced similar fact evidence of other crimes during the guilt phase and then relied on its guilt-phase evidence in the penalty phase. Although the Court determined the introduction of the similar fact evidence was harmless in the guilt phase, it could not say the State demonstrated beyond a reasonable doubt that the similar fact evidence did not affect the penalty phase. Id. at 1096-97.
On remand, the jury unanimously recommended death. The trial judge found three aggravating factors[3] and rejected the statutory mental mitigators Lawrence asked the court to consider.[4] Although Lawrence did not argue the existence of any specific nonstatutory mitigating factors, the trial judge considered whether the same arguments defense counsel made in support of the statutory mental mitigators supported a finding of nonstatutory mitigation. After reconsidering the evidence, however, the trial court found that no nonstatutory mitigation existed and alternatively that even if it did, the mitigation was not entitled to substantial weight. The judge then determined that the aggravating factors outweighed the mitigating factors and sentenced Lawrence to death.
Lawrence raises eight issues on appeal: (1) the trial judge failed to instruct the sentencing jury as to the meaning of the term reasonable doubt; (2) the trial judge erroneously permitted the introduction of inadmissible collateral crime evidence; (3) the trial judge erroneously permitted the State to read the trial testimony of Sonya Gardner after finding her unavailable to testify; (4) Lawrence's waiver of his right to present mitigating evidence was not knowing, intelligent, and voluntary; (5) the prosecutor erroneously exploited the jurors' religious beliefs; (6) the evidence did not support the pecuniary-gain aggravator; (7) the judge should have considered Lawrence's cocaine use on the night of the murder as a mitigating factor; and (8) section 921.141(7), Florida Statutes *1072 (1993), allowing for the introduction of victim-impact evidence is unconstitutional.
We find that the first and final issues Lawrence raises require only minimal consideration in light of several recent decisions from this Court. In Archer v. State, 673 So.2d 17 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 197, 136 L.Ed.2d 134 (1996), this Court addressed the first issue Lawrence now raises. In Archer, as in this case, the trial judge gave the resentencing jury the standard penalty-phase instructions. An instruction stated that the State has the burden of proving each aggravator beyond a reasonable doubt. Another instruction stated that mitigating factors need not be proven beyond a reasonable doubt. Although Archer did not object to the standard jury instructions at trial, he argued on appeal that the trial judge erred in failing to provide the resentencing jury a definition of reasonable doubt. We held that failure to define reasonable doubt to the jury in the sentencing phase of a capital trial is not fundamental error. Id. at 20. Consequently, a party challenging the standard penalty-phase instructions on the basis that they do not define reasonable doubt must do so by means of a contemporaneous objection. Because Lawrence, like Archer, failed to timely object to the standard jury instructions given by the trial judge, we reject his claim.[5]
Likewise, we reject Lawrence's final claim, based on our recent decision in Windom v. State, 656 So.2d 432 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995). In his appeal, Lawrence challenges section 921.141(7), Florida Statutes (1993), on several constitutional bases. At trial, however, he objected to the statute on only a single basis.[6] He argued that victim-impact evidence was not admissible in his resentencing because it was not admissible at the time of the original sentencing proceeding. In Windom, we upheld section 921.141(7) against a similar ex post facto challenge. We found that the statute was procedural and thus did not violate any prohibition against ex post facto laws. Windom, 656 So.2d at 439; see also Allen v. State, 662 So.2d 323 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1326, 134 L.Ed.2d 477 (1996).
In his second claim, Lawrence alleges that the trial judge admitted irrelevant evidence of a collateral crime. We disagree with Lawrence's representation of the State's evidence. In particular, we do not find that the testimony which Lawrence challenges referred to a collateral crime.
At trial, the prosecutor asked a witness whether Lawrence said anything to her in September 1986 about a plan to commit a robbery. After the trial judge overruled defense counsel's objection to the question, the witness responded, "Some type of plan to get money." The prosecutor then asked the witness whether Lawrence said anything to her around the first week of October 1986 about an attempted Majik Market robbery. Lawrence objected and moved for a mistrial. The trial judge overruled the objection, and the witness responded: "He said that he from what I remember, that he did go across the street in an attempt to rob it, but he couldn't do it after looking at the clerk."
Lawrence claims the witness's statements referred to a separate attempted robbery and that, consequently, it was not relevant to any aggravating factor in this case. However, on the basis of the trial record, it can be inferred that the testimony referred to a statement Lawrence made about the instant crime and that Lawrence, in making the statement, simply was not truthful as to his completing the robbery. Based upon the record, the testimony was therefore relevant to the pecuniary-gain aggravator. The trial judge therefore did not abuse his discretion in admitting this testimony.
*1073 As his third issue, Lawrence contends that because the State did not show that Sonya Gardner was unavailable pursuant to section 90.804, Florida Statutes (1993), the trial judge erred in allowing the State to read her guilt-phase testimony to the resentencing jury. Specifically, he contends that allowing the State to read the trial testimony of a witness who was available to testify violated his right to confrontation.
The trial judge initially agreed that Gardner was not unavailable. When the State first requested that Gardner's former testimony be read to the jury, the trial judge denied the request. The trial judge later, over objection by defense counsel, decided the testimony should be read to the jury because Gardner, who was with Lawrence the night of the murder, might provide evidence relevant to several mitigating circumstances.
We agree that the State did not demonstrate that Gardner was unavailable. The investigator hired to locate Gardner determined that she was camping somewhere in Blackwater State Park in Santa Rosa County. He testified that he spoke with Gardner by telephone and that she initially agreed to appear. On the day she was scheduled to appear, however, she called to inform the investigator that she would not be present. Gardner's boyfriend later contacted the investigator by phone and told him that Gardner would come only if forced. The boyfriend also offered to provide the investigator with directions to Gardner's location, but the investigator did not obtain those directions. Instead, the investigator told Gardner's boyfriend he would call back the next day to tell Gardner if there was any way the State could get around her being present. The investigator did not call the boyfriend back before appearing at Lawrence's resentencing proceeding. Due to the investigator's failure to obtain the directions offered by Gardner's boyfriend, a subpoena was never issued to Gardner's current location. Based on these facts, we find that the State's efforts to procure Gardner as a witness were not sufficient to establish Gardner's unavailability, as that term is defined by section 90.804(1), Florida Statutes (1993).
Although we find the trial judge erred in his determination as to Gardner's unavailability, we do not find that the error was harmful in this proceeding. Because Gardner was not unavailable her testimony amounted to hearsay. Lawrence's objection to Gardner's prior testimony was thus ultimately a hearsay objection. Section 921.141(1), Florida Statutes (1993), states that in the penalty proceeding
evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.
Pursuant to this provision, the introduction of Gardner's prior trial testimony was harmless error because it was hearsay only if Lawrence was not given a fair opportunity to rebut the testimony. See Rhodes v. State, 638 So.2d 920, 924 (Fla.1994). On the basis of the record, we cannot conclude that Lawrence did not have a fair opportunity to rebut Gardner's testimony. Defense counsel cross-examined Gardner at the original trial. Lawrence could have offered the cross-examination during the instant sentencing proceeding but did not. Nor did he proffer any other rebuttal to the trial court. We therefore reject Lawrence's contention that the admission of Gardner's testimony requires that his death sentence be vacated.
Furthermore, we conclude that any error in admitting this evidence did not prejudice Lawrence. Gardner's testimony recounted the events surrounding the murder for which Lawrence was convicted. Since this evidence was admitted before the guilt-phase jury, Lawrence can show no prejudice. But for this being a resentencing, the sentencing jury would have heard this testimony in the *1074 guilt phase.[7] Moreover, Gardner's testimony supported the mitigating factors that Lawrence advocated. In fact, Gardner's testimony comprised almost all of the evidence presented with respect to mitigating factors. The only other evidence supporting mitigation was the brief cross-examination of one other State witness whom Lawrence told he had no recollection of the night of the murder because he was "strung out" on cocaine.
Lawrence next contends that his sentence must be reversed because he did not knowingly, intelligently, and voluntarily waive his right to present mitigating evidence. Lawrence asserts that when defense counsel rested its case without presenting any witnesses, the trial judge should have inquired into whether Lawrence made a knowing, intelligent, and voluntary waiver as prescribed in Koon v. Dugger, 619 So.2d 246 (Fla.1993).
In Koon we established the following rule:
When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.
Id. at 250. Koon does not apply here because the record does not indicate that Lawrence, against counsel's advice, refused to allow the presentation of mitigating evidence. The issue Lawrence actually raises appears to be ineffective assistance of counsel. That issue, however, is not cognizable on direct appeal. Wuornos v. State, 676 So.2d 972, 974 (Fla.1996); McKinney v. State, 579 So.2d 80, 82 (Fla.1991); Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Gibson v. State, 351 So.2d 948, 950 (Fla.1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978). Accordingly, we do not address it here.
In his fifth claim, Lawrence alleges that during closing argument the prosecutor made improper comments that equated the jury's sentencing task to "God's judgment of the wicked." In his closing argument, the prosecutor recounted a biblical story in order to describe the weighing process a jury must employ. Lawrence objected to the biblical reference on the basis that there was no evidence of scripture presented, and the prosecutor was thus arguing outside the evidence. Lawrence now alleges that the prosecutor's comments appealed to the jurors' emotions rather than reason and thus tainted the jury's recommendation. This argument was not preserved for review. Parker v. State, 456 So.2d 436, 443 (Fla.1984). Consequently, the prosecutor's comments will require resentencing only if they amounted to fundamental error. See Wyatt v. State, 641 So.2d 355, 360 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1372, 131 L.Ed.2d 227 (1995); Davis v. State, 461 So.2d 67, 71 (Fla.1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).
We have carefully reviewed the prosecutor's comments, and we find them similar in nature to the biblical references challenged in Bonifay v. State, 680 So.2d 413 (Fla.1996). As we did in Bonifay, we conclude that the comments in the context of the entire argument do not amount to fundamental error. Moreover, we find that even if Lawrence had preserved this issue for appeal, any error was harmless as it did not taint the jury's recommendation.[8]
*1075 Lawrence next contends that there was insufficient evidence to support the pecuniary-gain aggravator. Specifically, he argues that the State relied entirely on circumstantial evidence to prove this aggravator and, consequently, that the State's evidence had to be inconsistent with any reasonable hypothesis which might negate this aggravating factor. See Geralds v. State, 601 So.2d 1157, 1163 (Fla.1992). Lawrence alleges that the State did not meet its burden because the evidence presented was not inconsistent with the hypothesis that the murder was motivated by anger and that the money was taken as an afterthought.
Unlike the cases on which Lawrence relies, the evidence presented in this case to support the pecuniary-gain aggravator was not entirely circumstantial. As we indicated above in addressing Lawrence's second claim, a witness testified as to statements Lawrence made to her about his future plan to commit a robbery. The same witness testified that Lawrence later admitted entering a Majik Market to rob it. Although the witness added that Lawrence stated he did not go through with the robbery, we find this testimony, in conjunction with other evidence presented, provided evidentiary support for the pecuniary-gain aggravator. Thus, even if some evidence existed supporting Lawrence's theory that he shot the store clerk because she angered him, the trial judge was not required to reject this aggravator where, as here, there was competent, substantial evidence to support it. See Larkins v. State, 655 So.2d 95, 100 (Fla.1995). In addition to Lawrence's statements indicating an intent to rob the convenience store, the State presented evidence demonstrating that the cash register was open and empty when police arrived at the murder scene and that $58 was missing from the register. Moreover, Lawrence was convicted of robbery in the instant case. We conclude that this evidence, when considered in combination, supports beyond a reasonable doubt that the murder was committed for pecuniary gain. We therefore uphold the trial court's finding of the pecuniary-gain aggravator.
With respect to his seventh claim, Lawrence alleges that the trial judge erred in failing to consider his cocaine use as a mitigating factor. In support of this claim, he makes several arguments. First, he argues that the trial court improperly rejected cocaine use as a mitigator because it did not result in behavior that was equivalent to a mental or emotional disturbance. We conclude that Lawrence has misconstrued the trial judge's finding.
At trial, defense counsel argued that the evidence presented supported a finding of two statutory mitigators: (1) the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance; and (2) the capacity of the defendant to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired. As previously indicated, the trial judge rejected both statutory mitigators.
Although Lawrence did not argue any specific nonstatutory mitigating factors, the trial judge considered whether the evidence before it supported certain nonstatutory mitigators. Cf. Preston v. State, 607 So.2d 404, 411-12 (Fla.1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). The trial judge found that the evidence supporting the mitigator of any mental and emotional disturbance was slight. With regard to Lawrence's use of cocaine on the night of the murder, the judge concluded that it may have contributed to his commission of the murder but it did not have a substantial effect. Accordingly, the judge found that the mitigating factor of cocaine use had not been proven, and even if it had been proven, it was not entitled to substantial weight. Contrary to Lawrence's contention, we conclude that the trial judge considered Lawrence's cocaine use separate and apart from the statutory mental mitigators. Accordingly, we find that the trial judge properly evaluated this mitigator. In addition, our review of the record leads us to conclude that the trial court's finding with regard to this mitigating factor is supported by competent, substantial evidence. See Johnson v. State, 608 So.2d 4, 13 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993).
*1076 The second argument Lawrence makes with regard to this mitigating circumstance is that the trial judge failed to consider Lawrence's long-term drug and alcohol abuse as a mitigating factor. Defense counsel did not argue this specific mitigator at trial. Lawrence, however, points out that the State, in its sentencing memorandum, indicated that a presentence investigation report offered into evidence during the penalty phase of Lawrence's initial trial stated that Lawrence had a history of drug and alcohol abuse. The State argued in its sentencing memorandum that even if the presentence investigation established this as a nonstatutory mitigator, the mitigator should be afforded only slight weight. The trial judge's sentencing order, however, is devoid of any mention of this mitigator.
Lawrence contends that Farr v. State, 621 So.2d 1368, 1369 (Fla.1993), in which this Court stated that "mitigating evidence must be considered and weighed when contained anywhere in the record, to the extent it is believable and uncontroverted," requires a finding of the history-of-substance-abuse mitigator. We agree that the trial judge should have considered this mitigating evidence, even if it was entitled to only slight weight. Cf. Jones v. State, 652 So.2d 346 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 202, 133 L.Ed.2d 136 (1995). Even assuming the trial judge failed to consider this mitigating factor, though, we find that the error was harmless because the mitigator would not have offset the three aggravators that were properly found. See Wickham v. State, 593 So.2d 191, 194 (Fla.1991), cert. denied, 505 U.S. 1209, 112 S.Ct. 3003, 120 L.Ed.2d 878 (1992); Rogers v. State, 511 So.2d 526, 535 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Death is thus still a proper as well as proportionate sentence in this case.
Accordingly, for the reasons expressed, we affirm Lawrence's sentence of death.
It is so ordered.
OVERTON, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Justice, concurring in part and dissenting in part.
I dissent from that portion of the majority opinion alternatively finding no error or that the error was harmless in admitting the transcript of the former testimony of the important state witness, Sonya Gardner.[9] As one court has noted:
There is a clear constitutional preference for in-court confrontation of witnesses. U.S. Const. amend. VI; Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 607 (1980); Art. I, § 16, Fla. Const.; State v. Dolen, 390 So.2d 407 (Fla. 5th DCA 1980). The purpose of the confrontation clause is to afford an accused the fundamental right to compel a witness "to stand face to face with the jury [or trier of fact] in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Barber v. Page, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255, 258 (1968).
Palmieri v. State, 411 So.2d 985, 986 (Fla. 3d DCA 1982) (alteration in original).
While the rules of evidence are relaxed somewhat, we have held that the rule requiring a party to demonstrate a witness's unavailability before introducing her prior testimony is applicable to penalty phase proceedings. Hitchcock v. State, 578 So.2d 685, 690 (Fla.1990), vacated on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Section 90.804(1)(e) provides that a witness may be declared unavailable if the witness "[i]s absent from the hearing, and the proponent of [the witness's] statement *1077 has been unable to procure [the witness's] attendance or testimony by process or other reasonable means." The former testimony is admissible only if the witness is demonstrated to be unavailable at the later proceeding, and the burden of showing unavailability is on the party who seeks to use the testimony. § 90.804(1), (2)(a), Fla. Stat. (1993); Thompson v. State, 619 So.2d 261 (Fla.), cert. denied, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); Jackson v. State, 575 So.2d 181, 187 (Fla.1991); McClain v. State, 411 So.2d 316 (Fla. 3d DCA 1982).
The record shows the state's investigator, Tom Tucker, located Gardner the weekend before trial at a state park campground. Although Gardner initially told Tucker she would voluntarily appear on Monday morning, she did not show up. She telephoned Tucker that afternoon and said she did not want to leave her camping equipment. She also said she did not want to have anything to do with the trial and was scared of people in the area. A few hours later, Gardner's boyfriend called Tucker and said Gardner would come only if she was forced. The boyfriend agreed to direct Tucker to their campsite if Gardner's testimony were required. Tucker told the boyfriend he would call back if there was no way around Gardner's testifying. Tucker never called back. On this evidence, the trial court initially ruled the state had failed to demonstrate Gardner's unavailability. Later, however, the trial court reversed course and decided to allow her former testimony, despite Lawrence's objection, on the ground the testimony might be relevant to one of the statutory mitigating factors.
Inexplicably, after the state presented its other witnesses, the judge decided sua sponte to allow the prosecutor to read Gardner's former testimony to the jury:
On reflection, unless I somehow manage to get her in here, I think I am willing to change my ruling about Sonya Gardner's availability. I am concerned about relevance. One of the things that occurred to me and, Mr. Dees, I know that one of the mitigating factors you have just touched on it, I think one of the mitigating factors you may argue may have to do with whether the defendant acted under extreme mental or emotional distress or stress and if, in fact, she was with the defendant on the night of the killing, she may be ableI don't know what herI don't know if her testimony speaks to that.
I would be more inclined to allunless you are going to announce that you're not going to argue that as a mitigator, Mr. Dees, I would be more inclined to allow that than a great deal of facts about who did what with guns afterwards. I don't really think that speaks of any of the aggravating factors or mitigators.
Although the trial court mentioned its prior ruling on availability it provided no explanation for why that ruling was incorrect or should be changed. Relevance alone is obviously not sufficient to permit admission of the prior statement.
As previously noted, a witness's unavailability is an absolute prerequisite to the use of the witness's prior testimony under section 90.804. See Hitchcock, 578 So.2d at 690-91; Ehrhardt, Florida Evidence § 804.1 (1995 ed.) ("If the declarant is available to testify during the trial, evidence of a hearsay statement is not admissible under any of the section 90.804 exceptions even though all the other statutory requirements are met"). The trial court erred in reversing its ruling on the basis of relevance. It is obvious the state did not exhaust its efforts to obtain Gardner's presence. Gardner had been located in a nearby county, and, although she would not testify voluntarily, she agreed to direct the authorities to her location if her presence were required. The state could have subpoenaed Gardner and, if necessary, enforced the subpoena. The trial court's initial ruling disallowing Gardner's former testimony was correct.
Further, the error in admitting Gardner's prior testimony was clearly harmful. Here, the state emphasized Gardner's former testimony in closing argument, suggesting that even if Lawrence were using cocaine that night, it did not affect his behavior:
The only thing in mitigation you have heard is that he was using cocaine. But remember this. The testimony that was *1078 read to you that mentioned that he was using cocaine, it also said he drove the car from Milton to the Majik Market in Pensacola. He pumped gas into the car at the Majik Market. He drove the car to Fort Pickens. He walked on the beach with the girl, Sonya Gardner. And that's when he confessed to her that he shot the lady, and his own words was I shot the red-headed bitch, that's what he said, because she made me mad.
(Emphasis supplied.) The state made the same argument in its sentencing memorandum to the judge:
Although there was evidence that defendant had been using cocaine at the time of the murder, there was no evidence that he was "substantially impaired." He drove the car to and from the scene, at night, and he talked to Sonya Gardner about what he had done.
Finally, and most importantly, the trial judge specifically relied on Gardner's prior testimony in rejecting the mitigating circumstance of substantial impairment:
A witness who was with the defendant thought his behavior after the killing (of which she was unaware at the time) suggested he was "tripping" on cocaine. This same witness was not so troubled by the defendant's behavior either before or after the killing that she expressed any concern about riding considerable distances in an automobile driven by the defendant.
It is apparent that the error here, the erroneous admission of a prior statement, was directly harmful to appellant.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] The facts of this case are set out in Lawrence v. State, 614 So.2d 1092 (Fla.), cert. denied, 510 U.S. 833, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993).
[2] This Court rejected the following aggravators: (1) the murder was committed during the commission of a kidnaping and robbery, § 921.141(5)(d), Fla. Stat. (1989); (2) the murder was committed to avoid arrest, § 921.141(5)(e); (3) the murder was heinous, atrocious, or cruel, § 921.141(5)(h); and (4) the murder was committed in a cold, calculated, and premeditated manner, § 921.141(5)(i). Lawrence, 614 So.2d at 1096. The following aggravators remained: (1) the murder was committed while under a sentence of imprisonment, § 921.141(5)(a); (2) previous conviction of a prior violent felony, § 921.141(5)(b); and (3) the murder was committed for pecuniary gain, § 921.141(5)(f). Lawrence, 614 So.2d at 1096. The Court concluded that the felony-murder aggravator, § 921.141(5)(d), although still supported by the simultaneous robbery, had to be considered in conjunction with pecuniary gain as a single aggravating factor. Lawrence, 614 So.2d at 1096.
[3] In aggravation, the trial judge found: (1) the capital felony was committed by a person under sentence of imprisonment; (2) the defendant was previously convicted of a felony involving the use of violence toward another person; and (3) the capital felony was committed for pecuniary gain. § 921.141(5)(a), (b),(f), Fla. Stat. (1993).
[4] Lawrence argued that the capital felony was committed while he was under the influence of extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. § 921.141(6)(b),(f), Fla. Stat. (1993).
[5] Although we do not find that a definition of "reasonable doubt" is constitutionally required, we recommend that the Supreme Court Committee on Standard Jury Instructions in Criminal Cases consider and, if it finds necessary, propose a new sentencing-phase instruction which defines this term.
[6] We address only the basis on which Lawrence objected to the introduction of victim-impact evidence at trial. We find the other challenges Lawrence makes to section 921.141(7) are procedurally barred. See Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla.1987); Tillman v. State, 471 So.2d 32, 35 (Fla.1985).
[7] We have recognized that in resentencing proceedings, evidence which familiarizes the jury with the facts of a case is admissible. Teffeteller v. State, 495 So.2d 744 (Fla.1986).
[8] Although we recognize that the prosecutor's biblical reference in this case was not reversible error, we again caution prosecutors, as we did in Bonifay, that arguments invoking religion can easily cross the boundary of proper argument and become prejudicial. Bonifay, 680 So.2d at 418 n. 10; see also Ferrell v. State, 686 So.2d 1324 (Fla.1996).
[9] In addition, Gardner's prior testimony was inadmissible because it was given in the guilt phase of Lawrence's earlier trial, where the issues were different from those here. See Thompson v. State, 619 So.2d 261, 265 (Fla.1993) (even if original witness is unavailable, use of prior testimony allowed only if issues in prior cases are similar to those in case at hand). Because Lawrence's guilt was not an issue here, Lawrence obviously would have taken a completely different approach in cross-examining Gardner, had he been given the opportunity.